UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Arthur J. Doiron

        v.                              Civil No. 16-cv-327-JL

Cammie Byrd et al.[1]


### REPORT AND RECOMMENDATION


Plaintiff Arthur J. Doiron, a prisoner proceeding pro se, has filed a complaint (Doc. No. 1).  The complaint is before the court for preliminary review, pursuant to 28 U.S.C. § 1915A(a) and LR 4.3(d)(1).


### Standard


In determining whether a pro se pleading states a claim, the court construes the pleading liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007).  Disregarding any legal

---

[1]The defendants named in this action are: the New Hampshire State Prison ("NHSP") Medical Department; the NHSP Mental Health Department; NHSP Mental Health Clinician Cammie Byrd; NHSP Medical Department employee Denise Hoffman; the New Hampshire Department of Corrections ("DOC") Director of Medical and Forensic Services Paula Mattis; DOC employee Chris Kench; DOC Commissioner William Wrenn; NHSP Nurses Karen, Olivia, and Natalie, whose last names are not known; and Jane Does No. 1 and No. 2.  All defendants are sued in their individual and official capacities.

conclusions, the court considers whether the factual content in the pleading and inferences reasonably drawn therefrom, taken as true, state a facially plausible claim to relief.  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

## **Discussion**

### I.   **Misdiagnosis**

In April 2015, while Doiron was an inmate at the New Hampshire State Prison ("NHSP"), he received a copy of his mental health treatment plan, written by NHSP Mental Health Clinician Cammie Byrd.  In the treatment plan, Byrd had written that Doiron was HIV positive, a fact of which he was not aware. Over the several months that followed, Doiron sent numerous request slips trying to discover whether he was, in fact, HIV positive.  Doiron also repeatedly requested to have new bloodwork done, but his requests were denied.

In response to Doiron's December 8, 2015, inquiry, an unnamed NHSP Medical Department employee, identified by Doiron as "Jane Doe No. 1," stated, "You are not HIV positive.  You are Hep C positive."  On December 24, 2015, Doiron met with Dr. Jeffrey Fetter.  Dr. Fetter ordered new blood tests after reviewing Doiron's medical file and finding no blood test

results indicating that Doiron was either HIV or Hepatitis C positive.

To the extent Doiron asserts a claim for the denial of adequate medical care, such a claim arises under the Eighth Amendment.  "[T]o prove an Eighth Amendment violation, a prisoner must satisfy both of two prongs: (1) an objective prong that requires proof of a serious medical need, and (2) a subjective prong that mandates a showing of prison administrators' deliberate indifference to that need."  Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014), cert. denied, 135 S. Ct. 2059 (2015).  Deliberate indifference, however, is not demonstrated where an incarcerated plaintiff merely disputes the choice of a certain course of treatment, but does not allege a complete lack of treatment.  See id. at 92.  Further, a prison official's misdiagnosis is insufficient to demonstrate the deliberate indifference required to assert an Eighth Amendment violation.  See Ross v. Horton, 630 F. App'x 727, 727 (9th Cir. 2016); Stevens v. Gooch, 615 F. App'x 355, 360 (6th Cir. 2015); Allard v. Baldwin, 779 F.3d 768, 772 (8th Cir.), cert. denied, 136 S. Ct. 211 (2015).

Here, Doiron's complaint is that Byrd misdiagnosed him as HIV positive, and Jane Doe No. 1 misdiagnosed him as "Hep C" positive.  Such a claim alleges, at best, medical malpractice,

which is not actionable under 42 U.S.C. § 1983.  To the extent
Doiron states that he was denied adequate medical care, he has
failed to state that he had a serious medical need requiring
such care, as he alleges that all of his medical records, with
the exceptions of those that were incorrect, reveal that he is
neither HIV positive nor Hepatitis C positive.  As Doiron has
not stated a federal claim upon which relief might be granted,
his claims related to his medical diagnosis and care should be
dismissed, without prejudice to his ability to raise a tort
claim in state court.

II.  **Privacy in Medical Records**

Doiron states that on several occasions during his
incarceration at the NHSP, he requested medical information or
records by submitting an inmate request form, and that the
medical information he requested was returned to him attached to
his request, having been sent "openly" through the internal
prison mail system.  Further, he states that while on SHU, in
order to receive medical attention on sick call rounds, he had
to yell his medical problem to nurses in a manner that could be
overheard by SHU staff and other inmates.

Assuming, without deciding, that Doiron maintains a right
to privacy in his medical information protected by the

Fourteenth Amendment during his incarceration,[2] the assertions in the complaint, to date, fail to give rise to a reasonable inference that a violation of that right has occurred.  Doiron's assertions, that sending medical records through the prison's internal mail system risked disclosing confidential matters to staff or inmates with no interest in or right of access to that information, are entirely conclusory and speculative.  Further, Doiron has failed to identify any specific occasion on which he had to yell out medical information that was, in fact, private, and that information overheard by anyone else was identified as coming from him.  The court cannot determinatively find, however, that actions of defendants, in sending Doiron's blood test results and other medical information through the prison's

---

[2]See generally Adell v. Hepp, No. 14-CV-1277-JPS, 2015 U.S. Dist. LEXIS 148271, at *15, 2015 WL 6680237, at *4 (E.D. Wis. Nov. 2, 2015) ("Whether, and to what extent, an inmate retains a Constitutional right of privacy in his/her medical records is an open question in the First, Fourth, Seventh, and Eighth Circuits." (citing cases)); see also Nunes v. Mass. Dep't of Corr., 766 F.3d 136, 144 (1st Cir. 2014) (noting that incarceration inevitably diminishes privacy rights, while declining to rule on whether prisoners have constitutional right to keep medical information private).  Cf. Doe v. Delie, 257 F.3d 309, 317 (3d Cir. 2001) ("It is beyond question that information about one's HIV-positive status is information of the most personal kind and that an individual has an interest in protecting against the dissemination of such information. Moreover, a prisoner's right to privacy in this medical information is not fundamentally inconsistent with incarceration." (citations omitted)).

internal mail system, was adequate to protect Doiron's privacy
rights in that information.  Accordingly, in an Order issued
simultaneously with this Report and Recommendation, the court
grants Doiron leave to amend this claim to identify the
defendants who, he alleges, violated his right to privacy, and
to state, with specificity, what each identified defendant did
or failed to do that violated his right to privacy in his
medical information.

III. **Failure to Follow Prison Policies and Procedures**

An inmate has no freestanding constitutional right to have
prison officials follow prison policies if the officials'
actions are otherwise constitutional.  See Querido v. Wall, C.A.
No. 10-098 ML, 2010 U.S. Dist. LEXIS 139201, at *14, 2010 WL
5558915, at *3 (D.R.I. Dec. 8, 2010), R&R adopted, 2011 U.S.
Dist. LEXIS 1882, 2011 WL 63503 (D.R.I. Jan. 7, 2011).  To the
extent Doiron here asserts that any defendant is liable to him
for failing to follow prison policies or procedures, he cannot
assert a claim upon which relief might be granted, and the
district judge should dismiss such claims.

IV. **Supervisory Liability**

Doiron has not alleged any facts indicating that any
supervisory DOC or NHSP officer acted, or failed to act, in a
manner that violated his rights.  Without such a showing,

supervisory prison officials are not liable for the acts of
their subordinates, based solely on their supervisory authority
over, or even awareness of, those acts.  See Soto-Torres v.
Fraticelli, 654 F.3d 153, 159 (1st Cir. 2011); see also Iqbal,
556 U.S. at 676.  Accordingly, the district judge should dismiss
the claims Doiron has asserted against any individual in his or
her supervisory capacity.

**V.  Official Capacity**

The district judge should dismiss Doiron's claims against
the defendants in their official capacities, as such claims are
barred by the Eleventh Amendment.  See Davidson v. Howe, 749
F.3d 21, 27-28 (1st Cir. 2014); Coggeshall v. Mass. Bd. of Reg.
of Psychologists, 604 F.3d 658, 662 (1st Cir. 2010).

**Conclusion**

For the foregoing reasons, the district judge should
dismiss all of the claims asserted in Doiron's complaint except
his claim alleging a violation of his right to privacy in his
medical information.  The court, in an order issued this date,
grants Doiron leave to amend that claim to state a claim upon
which relief might be granted.  The district judge should
dismiss Doiron's medical negligence claims, regarding alleged
misdiagnoses, without prejudice to his ability to file such

7

claims in state court.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. <u>See</u> Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. <u>See</u> <u>Garayalde-Rijos v. Mun. of Carolina</u>, 747 F.3d 15, 21-22 (1st Cir. 2014).

_____

Andrea K. Johnstone
United States Magistrate Judge

October 26, 2016

cc:  Arthur J. Doiron, pro se